ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 24 2018

at 12 o'clock and 00 min. P M.
SUE BEITIA, CLERK

Mario Cooper
P.O. Box 851
Lihu'e, HI 96766
Tel. no. 727.510.6776
E-mail mdc.coop@gmail.com
Plaintiff *pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIO COOPER, | ) |
| | ) Civil No. **CV18 00284 ACK KSC** |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **Complaint; Jury Demand** |
| STATE OF HAWAII, | ) |
| Department of Taxation, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF HAWAII, | ) |
| Department of Human Resources | ) |
| Development, et al., | ) |
| | ) |
| Defendants. | ) |

## Complaint

1. NOW COMES the *pro se* Plaintiff, MARIO COOPER, (hereinafter

1

referred to as "Plaintiff") and brings this action for employment discrimination against Defendants State of Hawaii - Department of Taxation and State of Hawaii - Department of Human Resources Development, and the individuals named below for violating his rights under the Americans with Disabilities Amendments Act of 2008 ("ADA-AA"), as codified and amended at 42 U.S.C. §12101 *et seq.*, violating his rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., violating his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and violating his rights under Title I of the Civil Rights Act of 1991, 29 U.S.C § 1981a.

Additionally, the Defendants violated Plaintiff's rights under the Hawaii Employment Practices Act ("HEPA"), Hawai'i Revised Statutes ("HRS") § 378-2(3), *et seq.* Plaintiff's discharge was also a termination contrary to public policy. In support, Plaintiff would state as follows:

### Jurisdiction and Venue

2. This Court has jurisdiction to hear Plaintiff's federal claims pursuant to 28 U.S.C.§ 1331, 28 U.S.C. § 1343, and 42 U.S.C § 12117. This Court has jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court of Hawaii.

## Condition Precedent

4. A copy of Plaintiff's Right to Sue letter regarding his ADA-AA claims is attached as Exhibit "A". Plaintiff's EEOC questionnaire was filed on August 1, 2017, and Plaintiff's "charge" was filed on August 14, 2017, with the Honolulu EEOC office.

5. A copy of Plaintiff's Right to Sue letter regarding his HEPA claims is attached as Exhibit "B". The letter is dated July 18, 2018.

6. Plaintiff has exhausted all federal administrative remedies. All conditions precedent to the institution of this lawsuit have been fulfilled.

## Parties

7. Plaintiff, Mario Cooper, is a black male and an adult citizen of the State of Hawai'i residing in Kaua'i County. Plaintiff was employed by Defendant on May 1, 2015. Plaintiff's employment was terminated on July 20, 2017.

8. Defendant State of Hawaii - Department of Taxation ("DOTAX"), is a state entity charged with the administration of taxes under § 231 of the *Hawaii Revised Statutes*. Defendant has been engaged in a industry affecting commerce and has more than fifteen (15) employees. Defendant is an "employer" covered under the ADA-AA as the term is defined at 42 U.S.C. § 12111(5)(A).

9. Defendant State of Hawaii - Department of Human Resources

Development ("DHRD"), is a state entity charged with among other things, providing recruitment services, guidance with the ADA, and support for personnel actions for Hawaii state workers. Defendant has been engaged in a industry affecting commerce and has more than fifteen (15) employees. Defendant is an "employer" covered under the ADA-AA as the term is defined at 42 U.S.C. § 12111(5)(A).

10.   Defendant Linda Chu Takayama is the current Director of DOTAX. Defendant Ryker Wada is the Director of DHRD. Defendant Janice Nishimoto is the DHRD Worker's Compensation Adjuster assigned to Plaintiff's case. Defendant Lily Chu is the DHRD Safety Officer who conducted an assessment of Plaintiff. Defendant Jennifer Mori-Kilbey is the DHRD Vocational Rehabilitation Specialist who was assigned to Plaintiff's case. Erin Tsuda, is the Kauai District Tax Manager for DOTAX. Defendant Gene Dumaran is DOTAX's Personnel Management Specialist. Defendant Maria Zielinski is the former DOTAX Director who resigned amidst allegations that the independent audit reports for DOTAX's $60 million Tax System Modernization project had been "manipulated" under her leadership. Defendant Michelle Layosa-Bonilla was Plaintiff's direct supervisor, and is a Delinquent Tax Collector Assistant III. Defendant Dean Arashiro is DOTAX's Human Resource Specialist. Florence Baguio is a DHRD Personnel Program Manager. All individuals are being sued in their official and individual

capacities.

11. Each of the Defendants is responsible and liable, jointly and severally, for the events herein alleged, or in omitting to do those acts legally required, in that individually/and or collectively, they have caused Plaintiff injury and deprived Plaintiff of his rights. Each Defendant has acted throughout as an agent for each other.

12. The acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein.

### Statement of Facts

13. On or about May 1, 2015, Plaintiff began working as a Delinquent Tax Collection Assistant I in the Kauai District Office. At all relevant times herein, Plaintiff was employed by Defendant, who continuously employs more than fifteen (15) employees. Therefore, Plaintiff is an "employee" under the ADA-AA as the term is defined at 42 U.S.C. § 12111(4).

14. At all relevant times herein, Plaintiff has been qualified to perform his duties as a Delinquent Tax Collection Assistant I for DOTAX. Plaintiff performed his duties in a professional, diligent, and competent manner.

15. As a Delinquent Tax Collection Assistant I, Plaintiff was primarily

responsible for contacting taxpayers in an effort to get taxpayers to pay their delinquent taxes. Plaintiff processed his cases, Kaua'i residents whose state tax obligations were in arrears, by using the Defendant's new $60,000,000 (million) Tax System Modernization program ("TSM"), a supposedly fully integrated and automated off- the-shelf tax software solution.

Plaintiff believes that the increase in the number of keystrokes that accompanied the implementation of this new system caused and/or exacerbated Plaintiff's disability. Other DOTAX collectors on neighbor islands complained in meetings that the new TSM protocol for levies required twice as many keystrokes as the old system.

16. On or about Fall of 2015, Plaintiff felt pain in his right elbow, and shortly thereafter, pain in his left elbow. Plaintiff sought medical care and was ultimately diagnosed with bilateral triceps tendonitis.

17. Plaintiff believed that his working conditions caused or contributed to his disability and filed a worker's compensation claim with the Hawaii Department of Labor and Industrial Relations. On or about July 2015, a workers compensation hearing officer found that Plaintiff's bilateral elbow tendonitis was a job related injury and awarded Plaintiff temporary total disability payments.

18. While out on medical leave, Plaintiff telephoned the Kauai District Tax Manager, Erin Tsuda, and requested that he be provided accommodations. On

or about August 21, 2016, Plaintiff requested an ergonomic keyboard and chair. Plaintiff also requested that he allowed to come and go on flex time. For flex time, Plaintiff requested that he be allowed to come in fifteen (15) minutes earlier and leave 15 minutes earlier so he could get home earlier to treat his elbows.

19. Per the request of Gene Dumaran, a DOTAX personnel officer, Plaintiff submitted the required documents from his treating physician on or about October 6, 2016. The medical documentation provided by Dr. Raymond Martinez stated that Plaintiff has a disability performing manual tasks and indicated that Defendant should limit the repetitive movements of Plaintiff, and provide Plaintiff ergonomic corrections. On October 26, 2016, Defendant Dumaran denied Plaintiff's request for an ergonomic chair and keyboard and flex time.

20. On or about January 2017, Plaintiff requested to telecommute as an accommodation or alternatively, that he be allowed private, separate, office space. Per the request of Jennifer Mori- Kilbey, a DHRD vocational rehabilitation counselor, the required paperwork from his treating physician was sent to Defendants on or about January 7, 2017. The medical documentation submitted by Dr. Raymond Martinez indicated that stimuli from Kauai's District Office "exacerbate his symptoms." The documentation indicated that telecommuting would be an option.

Again, Plaintiff's accommodation request was denied. Defendants

used the pretext of confidentiality and security as reasons they denied Plaintiff's request to telecommute.

21. On about March 2017, Plaintiff complained to Erin Tsuda and Jennifer Mori-Kilbey about cold air in the office. Cold office air blowing on the back of Plaintiff's neck for several days caused a severe flare-up in Plaintiff's bilateral tendonitis. As a result, Plaintiff missed work from March 13, 2017, to July 9, 2017. Plaintiff submitted disability certificates from Dr. Martinez upon his returned to work on July 10, 2017. Plaintiff continued to perform the essential functions of his job until he was handed his discharge papers signed by Maria Zielinski and hand-delivered by Erin Tsuda on July 20, 2017.

### Count 1 - ADA-AA - Unlawful Termination

22. Plaintiff realleges and reincorporates paragraphs as alleged above.

23. Plaintiff's physical impairment caused him to be actually disabled under the ADA-AA. Plaintiff was "substantially limited" limited in his ability to perform manual tasks and in his ability to get sleep. The impairment caused Plaintiff extreme burning pain and this pain was accompanied by extreme fatigue in both arms. As a result, Plaintiff did not have the muscle endurance or strength of a normal person. As a result of his condition, Plaintiff struggled to be able to lift a pitcher of water out of the refrigerator. The severe pain made

Plaintiff refrain from using his arms for long periods of time. And when Plaintiff did use his arms, he had to take rest periods to perform routine tasks like brushing his teeth.

24.  Plaintiff's disability also impaired his ability to sleep. Plaintiff has to sleep in awkward arm positions to not further inflame his tendonitis. It is not just that the absolute pain caused the Plaintiff sleeping, which it did, the trouble sleeping created a cycle that fed to inflame the tendonitis. Plaintiff maintains that even on the rare nights Plaintiff was able to get a good night's sleep, he would still sometimes wake up feeling fatigue and pain as if his arms had not received any rest from the night before.

25.  The ADA-AA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

26.  Defendants DHRD and DOTAX violated Plaintiff's rights under ADA-AA by terminating the employment of Plaintiff because of the physical limitations of Plaintiff, who was a qualified individual with an actual disability and/or record of disability.

## **Count 2 - Rehabilitation Act 1973 - Unlawful Termination**

27. Plaintiff realleges and reincorporates paragraphs as alleged above.

28. Defendant DOTAX and DHRD receive federal funds.

29. The Rehabilitation Act of 1973 provides that " No otherwise qualified individual with a disability in the United States . . . solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination. 29 U.S.C. § 794.

30. Defendants DHRD and DOTAX violated Plaintiff's rights under Rehabilitation Act of 1973 by terminating the employment of Plaintiff because of the physical limitations of Plaintiff, who was a qualified individual with an actual disability and/or record of disability.

## **Count 3 - ADA-AA - Failure to Provide Leave as an Accommodation**

31. Plaintiff realleges and reincorporates paragraphs as alleged above.

32. [T]he term "discriminate against a qualified individual on the basis of disability"includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

33.  Under the ADA-AA, the term "reasonable accommodation" means "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities" as defined at 42 U.S.C. § 12111(9).

34.  The Defendants DHRD and DOTAX violated Plaintiff's rights under the ADA-AA by failing to provide Plaintiff leave as an accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

## Count 4 - Rehabilitation Act of 1973 - Failure to Provide Leave as an Accommodation

35.  Plaintiff realleges and reincorporates paragraphs as alleged above.

36.  The Defendants DHRD and DOTAX violated Plaintiff's rights under the Rehabilitation Act of 1973 by failing to provide Plaintiff leave as an accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

## Count 5 - ADA-AA - Failure to Provide an Ergonomic Keyboard as an Accommodation

37.  Plaintiff realleges and reincorporates paragraphs as alleged above.

38. Defendants DHRD and DOTAX violated Plaintiff's rights under the ADA-AA by failing to provide Plaintiff an ergonomic keyboard as an accommodation, because of the physical limitations of Plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 6 - Rehabilitaion Act of 1973 - Failure to Provide an Ergonomic Keyboard as an Accommodation

39. Plaintiff realleges and reincorporates paragraphs as alleged above.

40. Defendants DHRD and DOTAX violated Plaintiff's rights under the Rehabilitation Act of 1973 by failing to provide Plaintiff an ergonomic keyboard as an accommodation, because of the physical limitations of Plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 7 - ADA-AA - Failure to Provide Flex Time as an Accommodation

41. Plaintiff realleges and reincorporates paragraphs as alleged above.

42. The Defendants DHRD and DOTAX violated Plaintiff's rights under ADA-AA by failing to provide flex time as an accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 8 - Rehabilitation Act of 1973 - Failure to Provide Flex Time as an Accommodation

43. Plaintiff realleges and reincorporates paragraphs as alleged above.

44. The Defendants DHRD and DOTAX violated Plaintiff's rights under Rehabilitation act of 1973 by failing to provide flex time as an accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 9 - ADA-AA - Failure to Provide Telecommuting as an Accommodation

45. Plaintiff realleges and reincorporates paragraphs as alleged above.

46. The Defendants DHRD and DOTAX violated Plaintiff's rights under the ADA-AA by failing to grant Plaintiff's request to telecommute as a reasonable accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 10 - Rehabilitation Act of 1973- Failure to Provide Telecommuting as an Accommodation

47. Plaintiff realleges and reincorporates paragraphs as alleged above.

48. The Defendants DHRD and DOTAX violated Plaintiff's rights under the Rehabilitation Act of 1973 by failing to grant Plaintiff's request to telecommute

as a reasonable accommodation, because of the physical limitations of plaintiff, who was a qualified individual with an actual disability and/or record of disability.

### Count 11 - Termination against Public Policy

49. Plaintiff realleges and reincorporates paragraphs as alleged above.

50. Defendants, in their individual capacities, violated §76-46 of the HRS when it discharged Plaintiff without considering the good of the service. Also, Plaintiff's discharge did not promote the efficiency of government service because Plaintiff's former position remains vacant one (1) year later. Defendants did not consider or have not reconsidered the inefficiency of government service caused by Plaintiff's discharge. Plaintiff's discharge also was contrary to the public policy of collecting the State of Hawaii's tax revenue in an expedient and efficient manner.

### Count 12 - VII - Disparate Treatment

51. Plaintiff realleges and reincorporates the paragraphs as alleged above.

52. Title VII prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)

53. Employees outside of Plaintiff's protected classes (black and male)

received more favorable treatment. Plaintiff's coworker, Janice, who is an Asian female, has less qualifications and equal work record as Plaintiff. However, Janice received more favorable treatment than Plaintiff. Defendant Tsuda actively elicited the help of the deputy attorney general in order to provide Janice with a closer parking spot as an accommodation. Janice also missed quite a bit of work without being reprimanded or discharged. Additionally, Janice received a promotion to a Delinquent Tax Collection Assistant II despite not meeting the qualifications for the Delinquent Tax Collection Assistant I position.

54. The Defendants DOTAX and DHRD violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 when it treated Plaintiff disparately than other employee's because of Plaintiff's sex and/or race.

### Count 13 - HRS § 378-2(3) Violations

55. Plaintiff realleges and incorporates the paragraphs as alleged above.

56. §378-2(3) of the HRS states in pertinent part that it shall be a unlawful for "any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any . . . discriminatory practices forbidden by this part, or to attempt to do so."

57. The Defendants, in their individual capacities, aided and abetted each other in committing discriminatory acts against Plaintiff. These individuals used

email, phone, and in-person meetings to communicate, consult, and advise one another. Defendants engaged in acts as omissions to discredit plaintiff's disability, deny Plaintiff accommodations, and terminate Plaintiff's employment.

58. Layosa-Bonilla, Plaintiff's direct supervisor, and the catalyst in the termination of Plaintiff's employment, once referred to Plaintiff's life-changing disability as "a little something." Layosa-Bonilla's disability related disdain toward Plaintiff began when Plaintiff suggested his disability was work-related. Shortly thereafter, Layosa-Bonilla began refusing to approve related medical leave forms that were submitted by Plaintiff. Tsuda, Layosa-Bonilla's direct supervisor, would soon start exhibiting disdain for Plaintiff's disability as well. Tsuda exhibited her disdain when she offered flex-time to other employees in the Kauai District Office, but refused to accommodate Plaintiff with flex-time for his disability. Additionally, Plaintiff believes Tsuda drafted the termination letter signed by Zielinski.

59. Layosa-Bonilla aided, abetted, incited, compelled, or coerced others as well. Nishimoto, Mori-Kibey, Dumaran, Chu, Tsuda, Baguio, and Arashiro engaged in discriminatory acts and omissions against Plaintiff. These acts included Mori-Kibey, meeting with Chu, Tsuda, and Layosa-Bonilla on or about January 30, 2017, to persuade Nishimoto to order Plaintiff to take an unnecessary, involuntary, and biased medical examination. Around the same time, Tsuda and Layosa-Bonilla manufactured a new position description for Plaintiff which they submitted to

Mori-Kilbey. Mori-Kilbey would not let Plaintiff see the contents of this new position description upon her visit to the Kauai District Office on January 30, 2017.

60. A March 17, 2017, email composed by Layosa-Bonilla and forwarded to Nishimoto, Chu, and Mori-Kilbey by Tsuda misrepresented Plaintiff's work performance.

61. On or about June 20, 2017, Dumaran, Arashiro, Tsuda, Layosa-Bonilla, Mori Kilbey, Chu, and Baguio disseminated results from Plaintiff's independent medical examination amongst themselves. This examination results were biased and lacked medical justification. Despite this, the aforementioned Dumaran, Arashiro, Tsuda, Layosa-Bonilla, Mori Kilbey, Chu, Baguio used this examination as justification for Plaintiff's termination.

62. As final decision makers Takayama, Zielinski, and Wada, were ultimately responsible for compliance with all applicable state and federal laws. Takayama and Wada were informed about my accommodations request and subsequent termination, yet they failed to take prompt and appropriate corrective action. Takayama and Wada have condoned and permitted the aforementioned discriminatory acts by their omissions and failure to properly investigate. Therefore, the aforementioned Defendants violated § 378-2(3) of the HRS when they aided and abetted Zielinski in the discrimination of the Plaintiff.

## Jury Demand

63. Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

## Damages

64. As a direct result of Defendant's unlawful actions, Plaintiff has suffered noneconomic harm in the form of emotional distress. Additionally, as a direct result of Defendant's unlawful actions, Plaintiff has suffered economic harm.

65. The Defendant's unlawful employment acts and/or omissions complained of above were done with malice or with reckless indifference to the federally and state protected rights of Plaintiff.

## Prayer for Relief

WHEREFORE, Plaintiff prays that the court awards Plaintiff relief as follows:

66. Award Plaintiff back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

67. Award Plaintiff compensatory and punitive damages against Defendant in an amount to be determined by the jury;

68. Award Plaintiff all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees;

69. Reinstate Plaintiff back into the employ of the State of Hawaii, Department of Taxation, with reasonable accommodations;

70. Relief declaring that Defendants engaged in unlawful employment discrimination and injunction prohibiting future discrimination;

71. Plaintiff requests that his termination letter be expunged from all State of Hawaii records;

72. Any other other award the court deems proper.

Dated: Ele'ele Hawai'i  July, 21, 2018.

_____
Mario Cooper