IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIO COOPER,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, Department of Taxation, and STATE OF HAWAII, Department of Human Resources Development, et al.,<br><br>Defendants. | CIVIL NO. 18-cv-284 JAO-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 45) on all twenty of pro se Plaintiff's causes of action, and Plaintiff's Motions for Partial Summary Judgment on Counts 13, 14, and 18 (ECF Nos. 39, 41, 65). For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part, and Plaintiff's Motions are DENIED.

# I. BACKGROUND

## A. Facts[1]

Pro se Plaintiff Mario Cooper was employed as a delinquent tax collector with the Hawaii Department of Taxation ("HDT") when he began experiencing pain in both his elbows, which he attributes in part to the number of keystrokes he typed as a tax collector. ECF No. 36 ¶¶ 15–16. Plaintiff also alleges that the air vents in his office blew cold air on him which exacerbated his elbow pain. ECF No. 36 ¶ 21. Plaintiff filed a workers' compensation claim, and after a hearing, the Department of Labor and Industrial Relations Disability Compensation Division ("DLIR") found that Plaintiff suffered a work-related injury on March 11, 2016, which caused Plaintiff's bilateral elbow tendonitis. ECF No. 46 ¶ 3; ECF No. 66 at 4 ¶ 3. Through the course of three decisions on the matter, DLIR awarded workers' compensation benefits, including what is known as "temporary total disability" to Plaintiff for his injury for various periods of time. ECF Nos. 46-6, 46-7, 46-8.

Plaintiff continued to experience pain and discomfort in his elbows and on August 22, 2016, Plaintiff requested an ergonomic keyboard and chair. ECF No. 46-30 at 3; ECF No. 66 at 12 ¶ 19. Plaintiff claims that he also requested permission to telecommute to work. ECF No. 66 at 7 ¶ 32. HDT, however,

---

[1] Unless otherwise indicated, these facts are not in dispute.

contends that when Plaintiff asked for an ergonomic keyboard, HDT instructed him to make a formal request, and that his eventual formal request only sought a separate office space, which HDT denied.  *See* ECF No. 46-1 ¶ 25; ECF No. 46-30. But both HDT and Plaintiff agree that HDT engaged in an interactive process to provide reasonable accommodations.  ECF No. 46 ¶ 13; ECF No. 66 at 5 ¶ 13.

Then from May 23, 2017 to June 30, 2017, Plaintiff did not show up to work.  ECF No. 66 at 4 ¶ 7.  Plaintiff provided HDT with several medical slips establishing that Plaintiff was under medical care at various times throughout this period.  HDT received one of these medical slips on April 21, 2017, stating that Plaintiff would be able to return to work on May 23, 2017.  ECF No. 46-10; ECF No. 46 ¶ 6; ECF No. 66 at 4 ¶ 6.  But Plaintiff did not return to work on May 23, and HDT did not receive another medical slip until July 3, 2017, stating that Plaintiff would be able to return to work with no limitations on July 10, 2017. ECF No. 46-11; ECF No. 46 ¶ 10; ECF No. 66 at 4 ¶ 10.  Although Plaintiff contends he attempted to call HDT to apprise his employer of his medical absence between the period of May 23 to June 30, Plaintiff conceded at the hearing that he was never able to do so despite his attempts.  It is thus undisputed that from May 23, 2017 to June 30, 2017, Plaintiff did not show up to work and HDT was unaware of why he was absent.

A collective bargaining agreement governs Plaintiff's employment with HDT.  ECF No. 46 ¶ 2; ECF No. 66 at 4 ¶ 2.  Under the collective bargaining agreement, when an employee does not show up to work for fifteen days after the conclusion of a leave period, HDT may consider that employee to have resigned from employment.  ECF No. 46 ¶ 9; ECF No. 66 at 4 ¶ 9.  After a pre-discharge hearing, HDT discharged Plaintiff from his employment on July 17, 2017, on the grounds that he did not show up to work and did not inform HDT of his absence from May 23 to June 30, 2017.  ECF No. 46-19; ECF No. 46 ¶ 16; ECF No. 66 at 5 ¶ 16.

Plaintiff challenged his discharge under the collective bargaining agreement's grievance and arbitration process.  ECF No. 46 ¶ 17; ECF No. 66 at 5 ¶ 17.  While the grievance process was still ongoing, Plaintiff brought this lawsuit seeking relief on numerous grounds.

### B. Procedural History

Plaintiff brought this action on July 24, 2018 and filed his operative First Amended Complaint ("Complaint") on November 2, 2018.  The Complaint alleges the following causes of action:

- Counts 1 and 2: Unlawful termination in violation of the ADA and the Rehabilitation Act.

- Counts 3 and 4: Failure to provide leave as a reasonable accommodation in violation of the ADA and the Rehabilitation Act.

- Counts 5 and 6: Failure to provide ergonomic keyboard as a reasonable accommodation in violation of the ADA and the Rehabilitation Act.

- Counts 7 and 8: Failure to provide flex time as a reasonable accommodation in violation of the ADA and the Rehabilitation Act.

- Counts 9 and 10: Failure to provide telecommuting as a reasonable accommodation under the ADA and the Rehabilitation Act.

- Count 11: Termination against public policy under HRS § 76-46.

- Count 12: Race and sex discrimination under Title VII.

- Count 13: Aiding and abetting discrimination under HRS § 378-2(a)(3).

- Count 14: Procedural due process violation under 42 U.S.C. § 1983.

- Count 15: Substantive due process violation under 42 U.S.C. § 1983.

- Count 16: Assumpsit claim for failing to pay wages and disability benefits.

- Count 17: Failure to pay wages under Fair Labor Standards Act.

- Count 18: Conversion claim for failing to pay wages and disability benefits.

- Count 19: Bad Faith tort claim for failure to properly investigate and pay workers' compensation benefits.

- Count 20: Tortious interference of contract claim for interfering with his employment at HDT and interfering with his workers' compensation benefits.

Plaintiff filed Motions for Partial Summary Judgment on Counts 14 and 18 on November 26, 2018.  ECF No 39; ECF No. 41.  Defendants filed their Motion for Summary Judgment on December 14, 2018.  ECF No. 45.  Plaintiff next filed a Counter Motion for Summary Judgment on Count 13, which also served as his Opposition to Defendants' Motion for Summary Judgment.  ECF No. 65.  Thus, presently before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Motions for Partial Summary Judgment on Counts 13, 14, and 18.  ECF Nos. 39, 41, 45, 65.  The parties timely filed oppositions and replies.

## II.    STANDARD OF REVIEW

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citations and internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." (citation and quotation marks omitted)).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the Court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

Further, because Plaintiff is proceeding pro se, the Court must construe his complaint liberally and "afford the petitioner the benefit of any doubt." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  Pro se plaintiffs must still, however, "present some 'significant probative evidence tending to support the complaint'" on a motion for Summary Judgment. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir. 1984) (quoting *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983).

## III.  DISCUSSION

The Court addresses Defendants' Motion for Summary Judgment first, and then turns to Plaintiff's motions.

### A.  Eleventh Amendment Immunity

Defendants move for summary judgment on Counts 13, 14, and 15 on the grounds that the Eleventh Amendment bars the claims to the extent they are against the State.  *See* ECF 45-3 at 25–26.  The Eleventh Amendment does not bar claims

brought against defendants in their individual capacities, *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991), and Counts 13, 14, and 15 all assert claims against defendants in their "individual capacit[ies]." ECF No. 36 ¶¶ 57, 67, 70. Thus, Eleventh Amendment immunity does not apply here. Defendants have not raised Eleventh Amendment immunity for any other causes of action, and the Court does not address whether Eleventh Amendment immunity applies to the other counts. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (Eleventh Amendment essentially operates as an affirmative defense); *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760–63 (9th Cir. 1999) (same).[2]

### B.   Plaintiff's ADA and Rehabilitation Act Claims (Counts 1–10)

Plaintiff asserts several causes of action under the ADA and the Rehabilitation Act ("the Acts") alleging that HDT discriminated against him on the basis of his disability by terminating his employment (Counts 1–2) and by failing to provide him with reasonable accommodations (Counts 3–10). To establish a prima facie discrimination claim under the ADA, Plaintiff must show that (1) he is disabled under the ADA; (2) he is able to perform the essential job functions with or without reasonable accommodations; and (3) his employer discriminated against him because of his disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675

---

[2] Although the Eleventh Amendment has been called jurisdictional in nature, *see Edelman v. Jordan*, 415 U.S. 651, 678 (1974), it is not a jurisdictional bar. *See Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760–63 (9th Cir. 1999).

F.3d 1233, 1237 (9th Cir. 2012); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). Discrimination under the ADA can include terminating an employee on account of the disability, *see, e.g.*, *O'Brien v. R.C. Willey Home Furnishings*, 748 F. App'x. 721, 723 (9th Cir. 2018), or failing to provide reasonable accommodations, *see, e.g.*, *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001); 42 U.S.C. § 12112(b)(5). The Rehabilitation Act incorporates the identical ADA standards with respect to the employment discrimination claims here. *See Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 940–41 (9th Cir. 2009). Thus, the Court analyzes Plaintiff's identical ADA and Rehabilitation Act claims under the same standards.

Defendants move for summary judgment on the grounds that (1) Plaintiff is not disabled within the meaning of the Acts; (2) that Plaintiff was not able to perform essential job functions; and (3) that even if Plaintiff meets the above two requirements, Defendants made reasonable accommodations available to him and adequately engaged in an interactive process to identify and implement reasonable accommodations. ECF No. 45-3 at 8–17. The Court addresses each of Defendants' arguments in turn.

### i.    Whether Plaintiff Qualifies as Disabled

Defendants first argue that summary judgment on Plaintiff's ADA and Rehabilitation Act claims should be granted because Plaintiff was not "disabled"

within the meaning of those statutes. Under the Acts, a "disability" is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (Rehabilitation Act incorporates the ADA definition of disability). An impairment is any "physiological disorder or condition . . . affecting one or more body systems, such as . . . musculoskeletal." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018) (citing 29 C.F.R. § 1630.2(h)(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, . . . sleeping, . . . lifting, . . . and working." 42 U.S.C. § 12102(2)(A). Whether an impairment "substantially limits" a major life activity is interpreted broadly—the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity" in order to qualify. *Nunies*, 908 F.3d at 436 (quoting 29 C.F.R. § 1630.2(j)(1)(ii).

In *Nunies*, the plaintiff was a water delivery driver who suffered a partial tear of his left shoulder and resulting tendonitis. *Id.* at 432. The plaintiff testified that he had significant trouble lifting and working, stating that when he lifted his arms above his chest he experienced pain and numbness, although the injury had resolved a little more than a year later. *Id.* at 432, 436. On that record, the Ninth Circuit held there was "at least a dispute" over whether the plaintiff was disabled under the ADA because significant pain "when raising one's arm above chest

height substantially limits the major life activity of lifting and possibly working." *Id.* 436.

Here, very similarly to *Nunies*, Plaintiff also suffered from temporary tendonitis that limited his ability to use his arms. Plaintiff cites to his declaration, ECF No. 66-1, where he states that he has pain and numbness in both hands, and a loss of grip strength and dexterity. *Id.* ¶¶ 10, 13. He further states that the pain prevents him from sleeping, and that when his tendonitis "flares up," he is substantially limited in his ability to perform manual tasks and work, because even just "clicking a mouse or using a keyboard" becomes a "terror." *Id.* ¶ 14. On this record, just as in *Nunies*, the Court cannot rule as a matter of law that Plaintiff is not disabled under the ADA and Rehabilitation Act.

Defendants appear to argue both that elbow tendonitis is not a disability *per se*, and that temporary injuries can never qualify as disabilities. *See* ECF No. 45-3 at 10–13. Defendants cite to *Nuzum v. Ozark Auto. Distribs.*, 432 F.3d 839 (8th Cir. 2005) for the proposition that "elbow tendonitis is not a 'disability' covered by the ADA." ECF No. 45-3 at 13. But the court in *Nuzum* had a much more developed record and engaged in an individualized assessment of the plaintiff's tendonitis to determine whether it substantially limited the plaintiff's major life activities; *Nuzum* did not state that elbow tendonitis can never be a "disability." *Nuzum*, 432 F.3d at 844–48. The same is true of *Howard v. Navistar Int'l Transp.*

*Corp.*, 904 F. Supp. 922 (E.D. Wis. 1995).

Although Defendants point to the allegedly temporary nature of Plaintiff's tendonitis, Defendants have not cited any legal authority for the proposition that a non-permanent condition cannot be a "disability." Indeed, the ADA on its face does not differentiate between a permanent and temporary impairment, and the plaintiff in *Nunies* had a non-permanent shoulder injury. 908 F.3d at 432. Thus, a reasonable jury could conclude that Plaintiff was "disabled" for purposes of the ADA and Rehabilitation Act regardless of whether his tendonitis was chronic or temporary.

### ii.    Whether Plaintiff is a Qualified Individual Able to Perform the Essential Job Functions

Defendants argue that Plaintiff is not a qualified individual because he failed to attend work from March 23 to June 30, 2017 and failed to inform his employer of his absence. *See* ECF No. 45-3 at 17. Plaintiff counters that he would have been able to perform his tax collection duties if he was provided with the accommodations requested but does not address Defendants' argument that attendance at work is itself an essential job function. *See* ECF No. 65-1 at 18–21.

A "qualified individual" is an individual who can "perform the essential functions of the employment position," with or without reasonable accommodations. 42 U.S.C. § 12111(8). "Essential functions are "fundamental job duties." 29 C.F.R. § 1630.2(n)(1). Essential functions do not include "the

marginal functions of the position." *Id.* The employment protections of the ADA only apply to disabled persons who can perform the essential job functions with or without reasonable accommodations. *See Bates*, 511 F.3d at 989. Courts have acknowledged that "where performance requires attendance at the job, irregular attendance compromises essential job functions." *Samper*, 675 F.3d at 1237. Indeed, it is a "rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual." *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999).

Here, it is undisputed that Plaintiff failed to attend work from March 23 to June 30, 2017 and failed to inform his employer of his absence. ECF No. 66 at 4 ¶ 7. Even if Plaintiff could have performed his job duties remotely, and that therefore on-site attendance was not mandatory, informing his employer of when he was going to be missing from work is another "common-sense" essential job requirement. Here, Plaintiff simply stopped working for over a month, during which he failed to inform his employer of why he was missing work and how long he would be gone. Even if Plaintiff had a medical basis to stay home from work, communicating one's absence from work to an employer is unquestionably a fundamental job duty. Thus, because Plaintiff was unable to communicate his absence to his employer for over a month and was on "no-show no call" status, there is no dispute that Plaintiff was not able to perform an essential duty of his job

and was not a qualified individual.

### iii.    Whether Defendants Discriminated Against Plaintiff

The third element of ADA and Rehabilitation Act claims is that the employer discriminated against the plaintiff on the basis of his or her disability. Plaintiff's Counts 1 and 2 allege that he was terminated on the basis of his disability and Counts 3 through 10 allege that he was not provided with reasonable accommodations. Defendants move for summary judgment on all of these claims on the grounds that there is no material dispute that Defendants did not discriminate against Plaintiff.

### a.    *Discriminatory Termination (Counts 1–2)*

Counts 1 and 2 of the Complaint allege that Defendants discriminated against Plaintiff by terminating his employment because of his disability. ECF No. 36 ¶¶ 26, 30. "The ADA makes it unlawful to discharge a person . . . on account of that disability." *O'Brien*, 748 F. App'x at 723. Courts apply the same Title VII burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to ADA cases. *Id.*; *see also Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 858 & n.9 (9th Cir. 2016). Thus, once a defendant proffers a legitimate non-discriminatory basis for the termination, the burden shifts to the Plaintiff to show that the proffered basis was mere pretext. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

Here, Defendants offered sufficient evidence that they terminated Plaintiff's employment for a legitimate, non-discriminatory reason—that Plaintiff was on "no-call no-show" status from March 23 to June 30, 2017, which constituted a resignation under the collective bargaining agreement. *See* ECF No. 45-3 at 22–24; ECF No. 46 ¶ 7; ECF No. 66 at 4 ¶ 7; ECF No. 46-19; ECF No. 46-5 at 79; ECF No. 46-2 ¶¶ 16–17. Thus, it was Plaintiff's burden to establish a reasonable dispute over whether Defendants' proffered basis was pretext, but Plaintiff has failed to meet his burden.

Plaintiff offers no evidence that his termination was based on his disability rather than his admitted failure to inform his employer of his absence from March 23 to June 30. As evidence of pretext, Plaintiff argues that despite his termination letter stating that Plaintiff had previously been on "no call, no show" status, Plaintiff had never had any prior unexcused work absences. ECF No. 65-1 at 23. But his termination letter, ECF No. 46-19, relies almost exclusively on his admitted "no call, no show" status from May 23 to June 30. The termination letter only briefly mentions that there were prior warnings, noting a prior incident on October 20, 2016. *Id.* Even if Plaintiff is correct that this was the first time he was ever absent from work without informing his employer, being absent for over a month without providing notice is more than adequate justification for termination and is indeed considered a "resignation" under the terms of his employment

agreement.  ECF No. 46-5 at 79.  Moreover, Plaintiff's allegation that HDT's phone system was "so unreliable" that he could not always call in is insufficient. Even if the phone system was unreliable, Plaintiff's failure to communicate his medical leave to his employer is grounds for termination.  For example, he could have used email or the postal service to send his medical leave slips, which he was able to do before and after his unexcused absence from March 23 to June 30.  *See* ECF Nos. 46-9, 46-10, 46-11.

The Court therefore GRANTS Defendants' Motion for Summary Judgment on Counts 1 and 2.

b.     *Reasonable Accommodations (Counts 3–10)*

The Complaint alleges that Defendants should have provided Plaintiff with the following accommodations: leave of absence (Counts 3 and 4); use of ergonomic keyboard and mouse (Counts 5 and 6); flex time (Counts 7 and 8); and telecommuting (Counts 9 and 10).  Defendants move for summary judgment on these claims on the grounds that Defendants complied with the interactive process for assessing accommodations and either provided Plaintiff with accommodations or were not required to provide Plaintiff with the accommodations sought.  *See* ECF No. 45-3 at 14–17.

Under the ADA, one form of discrimination occurs when an employer fails to make "reasonable accommodations to the known physical or mental limitations"

of a disabled employee.  42 U.S.C. § 12112(b)(5)(A).  "Once an employer

becomes aware of the need for accommodation, that employer has a mandatory

obligation under the ADA to engage in an interactive process with the employee to

identify and implement appropriate reasonable accommodations."  *Humphrey*, 239

F.3d at 1137 (citing *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000)).  In

the context of providing accommodations, the ADA only requires employers to

provide disabled employees with "reasonable" accommodations, which are

"mechanisms to remove barriers" caused by the disability.  *Cripe v. City of San

Jose*, 261 F.3d 877, 889 (9th Cir. 2001).

An employee's request for an accommodation triggers the interactive

process.  *Barnett*, 228 F.3d at 1114 (judgment vacated on other grounds by *U.S.

Air, Inc. v. Barnett*, 535 U.S. 391 (2002)).  The interactive process requires

employers and employees to cooperate in a good faith effort to find reasonable

accommodations.  Employers should meet with the employee to find out more

information about the employee's limitations, what the employee desires, and to

discuss possible accommodations.  *Id.* at 1115.  Summary judgment is not

warranted where there is a genuine dispute over whether the employer engaged in

the interactive process in good faith.  *Id.*  "[L]iability for failure to provide

reasonable accommodations ensues only where the employer bears responsibility

for the breakdown" and only when a reasonable accommodation would have been

possible. *Id.* (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135-37 (7th Cir. 1996).

Not only has Plaintiff submitted no evidence that HDT failed to engage in the interactive process in good faith, but Plaintiff admitted that HDT engaged in the interactive process. ECF No. 66 at 5 ¶ 13. Defendants cite to several letters they sent to Plaintiff which document HDT's good faith efforts to meet with Plaintiff to arrive at reasonable accommodations. *See* ECF No. 45-3 at 15–16. Plaintiff does not dispute the accuracy of this evidence, nor does Plaintiff offer any evidence otherwise. When Plaintiff requested an "ergonomic keyboard and chair" on August 22, 2016, ECF No. 66-1 ¶ 19, HDT asked him to fill out a form outlining his request in writing. ECF No. 46-1 ¶ 25. This is consistent with the interactive process to engage in a discussion and find out more information from Plaintiff about his limitations and proposed accommodation. *See Barnett*, 228 F.3d at 1114–15 ("Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process.").

Plaintiff's written request, however, did not seek ergonomic office equipment, but rather a private office space "away from work area distractions including auditory, visual, and smell distractions." ECF No. 46-30 at 2. Nonetheless, HDT continued to engage in the interactive process by informing Plaintiff that although a separate office space free of "distractions" was not

medically related to his elbow tendonitis, they would continue to examine possible "ergonomic corrections" and how to "limit[] repetitive movements," and would continue to communicate with Plaintiff about other possible accommodations. *Id.* at 3. HDT sought additional input from Plaintiff's medical provider, ECF No. 46-31, and in January of 2017, HDT scheduled an office review and meeting with Plaintiff to discuss possible ergonomic accommodations or ways to limit repetitive motions. ECF No. 46-34. During the office review, HDT noted that Plaintiff continued to complain about noise distractions and cold temperatures but declined to move to a cubicle in what might be a quieter and possibly warmer location, instead maintaining that he needed a separate office. ECF No. 46-35 at 2.

Moreover, Plaintiff has not submitted any evidence of his own good-faith efforts to engage in the interactive process. As the person suffering from elbow tendonitis, Plaintiff possessed the knowledge of what job-related limitations he had. But nothing in the record shows that he ever discussed these limitations with Defendants. Indeed, there is no evidence that Plaintiff's job performance suffered or that he was unable to perform any portions of his job. Without ever apprising Defendants of what specific limitations he had when performing his work, it is unclear how Defendants could have created reasonable accommodations for him.

Further, the specific accommodations that Plaintiff alleges HDT failed to provide him were either provided to Plaintiff or were not reasonable. First,

Plaintiff asserts that HDT failed to provide him with a leave of absence. ECF No. 36 at 11. However, Defendants did provide Plaintiff with leave during the period he was on temporary disability status through his workers' compensation claim. ECF No. 46 ¶¶ 5, 6; ECF No. 66 at 5 ¶¶ 5, 6. Plaintiff does not dispute that HDT allowed Plaintiff to miss work when he provided a medical note as required by the collective bargaining agreement. ECF No. 46-5 at 78 (allowing for recuperation from "physical or mental illnesses"). Plaintiff has also failed to offer any evidence that he requested and was denied a leave of absence.

Second, Plaintiff asserts that Defendants failed to provide Plaintiff with an ergonomic keyboard as an accommodation. ECF No. 36 at 12. But Plaintiff submitted no evidence of any specific ergonomic changes to his keyboard that would have helped, and Plaintiff's own medical provider stated that once Plaintiff was back from his medical leave, he would be able to return to work with "no limitations." ECF No. 46-11. And as discussed above, HDT engaged in the interactive process to determine what specific ergonomic modifications could be made to accommodate Plaintiff's condition.

Third, Plaintiff asserts that Defendants failed to provide Plaintiff with "flex time." *Id.* at 13. But Plaintiff never requested flex time as an accommodation and did not offer any indication to HDT that flex time could have accommodated Plaintiff's elbow tendonitis. And in any event, there is no evidence that flex time

would have been a reasonable accommodation for Plaintiff's elbow tendonitis. *C.f. Rayburn v. City of Phoenix Hous. Dep't*, No. 06-CV-1590-PHX-SRB, 2008 U.S. Dist. LEXIS 123675, at *20, 2008 WL 8871872, at *6 (D. Ariz. April 29, 2008) ("Simply being disabled does not entitle one to an accommodation that bears absolutely no relation to one's disabilities."). Just as with the ergonomic keyboard request, HDT engaged in the interactive process, and Plaintiff only responded to HDT with a request for a separate office space due to distractions. ECF No. 46-30.

Lastly, Plaintiff asserts that Defendants failed to provide Plaintiff with telecommuting as a reasonable accommodation. ECF No. 36 at 13. Defendants respond that the nature of Plaintiff's work with sensitive taxpayer information required Plaintiff to work at the office. *See* ECF No. 46-1 ¶ 27.

Plaintiff points to "section 4.7 of IRS regulation 1075," which Plaintiff alleges "specifically allows handlers of Federal Taxpayer [I]nformation ("FTI") to telework from home." ECF No. 65-1 at 20 (citing to ECF No. 66 at Ex. F). But Plaintiff's one-page exhibit actually states that "*[i]f the confidentiality of FTI can be adequately protected*, telework sites, such as employee's homes . . . can be used." ECF No. 66 at Ex. F (emphasis added). The regulations also require that all of the regular security requirements apply equally to telework cites. *Id.* Thus, the IRS regulations do not contradict Defendants' assertion that it could not allow Plaintiff to telecommute for security reasons, and Plaintiff has submitted no other

evidence that teleworking was possible. Moreover, Plaintiff's pleadings state that the reason why telecommuting was necessary was because he has ergonomic office equipment at home. ECF No. 65-1 at 19. Ironically, however, as discussed above, when Defendants asked Plaintiff about reasonable ergonomic accommodations, Plaintiff only requested a separate office space free from distractions and did not inform Defendants of the type of ergonomic equipment he had at home.

Thus, the Court concludes that summary judgment is warranted on Plaintiff's ADA accommodation claims, because: (1) Plaintiff was responsible for the breakdown in the interactive process, (2) Defendants provided leave of absences to Plaintiff, and (3) the requested accommodations were not reasonable as there is no evidence they would have accommodated his elbow tendonitis.

The Court therefore GRANTS Defendants' Summary Judgment Motion on Plaintiff's claims that HDT failed to provide him with reasonable accommodations, asserted in Counts 3 through 10.

## C. Plaintiff's Racial Discrimination Claims (Counts 12–13)

Plaintiff asserts that Defendants discriminated against him on the basis of his race and sex under both Title VII of the Civil Rights Act, as well as Hawaiʻi's corresponding statute barring employment discrimination. ECF No. 36 at 15–16.

### i. Title VII (Count 12)

Under Title VII of the Civil Rights Act, it is unlawful for an employer to

"discharge any individual, or otherwise to discriminate against any individual . . .

because of such individual's race, color, [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1).

Under the *McDonnell Douglas* framework, to make out a discrimination claim,

Plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was

qualified for the position; (3) he suffered an adverse employment action; and (4)

similarly situated individuals outside the protected class were treated more

favorably. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

Alternatively, a Plaintiff "may simply produce direct or circumstantial evidence

demonstrating that a discriminatory reason more likely than not motived the [the

defendant]." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Once a plaintiff meets his prima facie case, the burden shifts to the defendant to

produce a legitimate non-discriminatory reason for the adverse employment action.

*Id.* at 1123. If the defendant does so, the burden returns to Plaintiff to "produce

some evidence suggesting that [the defendant's] [adverse action] was due in part or

whole to discriminatory intent," *id.*, or submit evidence that the proffered reason

was mere pretext. *Farrier v. City of Mesa*, 384 F. App'x 683, 684 (9th Cir. 2010).

The parties do not dispute the first three elements. Only the fourth element

is at issue here. Plaintiff contends in his Complaint that HDT treated one of his

Asian female coworkers more favorably by providing her with a parking spot

accommodation and not firing her when she had medical absences. ECF No. 36 at

15.  Defendants argue that the alleged co-worker was not similarly situated because she had never been warned for failing to show up to work without an excuse, submitted timely medical certificates to support her request for a closer parking space, and had a different disability than Plaintiff.  Plaintiff does not address this argument, *see* ECF No. 65-1 at 13–23, and so the Court cannot guess as to what Plaintiff's response might be.  Even assuming, however, that Plaintiff has met his prima facie case of discrimination, Defendants proffered a legitimate non-discriminatory reason for terminating Plaintiff.  As discussed above in the ADA context, Defendants produced ample evidence that they terminated Plaintiff because he did not show up to work from May 23 to June 30, 2017 and did not communicate his medical absence in any way to Defendants.  ECF No. 45-3 at 23; ECF No. 46-19.

Similar to his ADA claim, Plaintiff produced no evidence of discriminatory intent, nor any evidence that Defendants' proffered basis for termination was pretextual.  There is nothing in the record that would provide a reasonable dispute as to whether Defendants terminated Plaintiff on the basis of his race or sex, nor anything to warrant a dispute as to whether the proffered basis was pretextual.

Lastly, Defendants argue that the Department of Human Resources cannot be liable for Plaintiff's Title VII claim because the Department of Human resources was not Plaintiff's employer.  During the hearing, Plaintiff agreed that he

had no employment relationship with the Department of Human Resources. Title VII only applies to Plaintiff's employer. *See* 42 U.S.C. § 2000e-2(a); *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213–14 (9th Cir. 1989). This is an additional basis to grant Summary Judgment as to the Department of Human Resources.

For all the above reasons, summary judgment is GRANTED as to Count 12.

### ii.     HRS § 378-2(a)(3) (Count 13)

Plaintiff also brings a claim for unlawful discrimination under Hawaiʻi's employment discrimination law, alleging that the individual defendants aided and abetted each other in committing discriminatory acts against him. ECF No. 36 ¶ 57. Hawaiʻi's employment discrimination law is analogous to Title VII, and the Hawaiʻi Supreme Court has adopted the *McDonnell Douglas* burden shifting analysis described above. *See Schefke v. Reliable Collection Agency, Ltd.*, 32 P.3d 52, 69–70 (Haw. 2001).

Here, just as with the Title VII claims, Defendants assert a legitimate non-discriminatory motive for terminating Plaintiff's employment, and Plaintiff has not proffered any evidence otherwise. Indeed, other than the allegations in the Complaint, the record is devoid of any evidence that the individual defendants "engaged in acts [or] omissions to discredit [P]laintiff's disability, deny Plaintiff accommodations, and terminate Plaintiff's employment." ECF No. 36 ¶ 58. For

example, in the Complaint, Plaintiff asserts that Defendant Layosa-Bonilla "began refusing to approve related medical leave forms that were submitted by Plaintiff," and that several of the employees "exhibit[ed] disdain for Plaintiff's disability." *Id.* But Plaintiff did not submit any evidence to support these allegations, even in his own declaration. *See* ECF No. 66 at 2–7. Indeed, Plaintiff has not addressed this claim at all in his Opposition, ECF No. 65-1, and therefore concedes the claim. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (quoting *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2008))).

Plaintiff argues in his Motion for Partial Summary Judgment on Count 13, that Defendants are liable under the ADA and Rehabilitation Acts for requiring Plaintiff to submit to an improper medical examination. ECF No. 65-1 at 8–12. But Count 13 alleges only a violation of HRS 378-2(3), and only against individual Defendants. The ADA and Rehabilitation Act do not impose liability on individual defendants, *see Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006); *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); thus, to the extent Plaintiff's Count 13 alleges an ADA or Rehabilitation Act violation, that claim is barred. ECF No. 36 at 16.

Even under HRS 378-2(3), Plaintiff has not presented any evidence that the

individual Defendants' request for a medical evaluation had any discriminatory animus. And the individual defendants could properly seek a medical examination of Plaintiff under the workers' compensation statute. *See* HRS 386-79.

For all of these reasons, the Court GRANTS Defendants' Motion for Summary Judgment on Count 13.

### D.     Plaintiff's Due Process Claims (Counts 14–15)

Plaintiff asserts two causes of action under 42 U.S.C. § 1983, alleging both procedural and substantive due process violations. Plaintiff's procedural and substantive due process claims are distinct claims asserting different grounds for relief. Plaintiff's procedural due process claim alleges that Defendant Janice Nishimoto terminated Plaintiff's workers' compensation benefits "without any hearing or chance to respond." ECF No. 36 at 19. Plaintiff's substantive due process claim alleges that Defendants Zielinski, Dumarna, Mori-Kilbey, Layosa-Bonilla, Nishimoto, Wada, and Tsuda all violated Plaintiff's substantive due process rights when they (1) terminated Plaintiff based on an "arbitrary and capricious" interpretation of his employment agreement, (2) failed to investigate Plaintiff's injury; and (3) failed to address Plaintiff's concern that air vents "had caused and was contributing to [Plaintiff's] injury." ECF No. 36 at 20.

Defendants' Motion for Summary Judgment does not distinguish between Plaintiff's procedural and substantive due process claims, instead asserting the

28

same five conclusory arguments for both.  The Court addresses separately

Plaintiff's discrete procedural and substantive due process claims.

### i.      Procedural Due Process (Count 14)

Plaintiff asserts a procedural due process violation against Defendant Janice

Nishimoto in her individual capacity for allegedly terminating his workers'

compensation benefits without a hearing or opportunity to respond.  ECF No. 36 ¶

67.  Defendants appear to argue primarily that summary judgment should be

granted on the procedural due process claim because the workers' compensation

system provides adequate process to challenge any denial, and therefore no

procedural due process violation occurred.  *See* ECF No. 45-3 at 27.  Plaintiff does

not respond to this argument.  Moreover, Plaintiff does not challenge the

procedures and processes afforded by the workers' compensation statute: rather, he

challenges only Defendant Janice Nishimoto's denial of his workers' compensation

benefits without an additional hearing outside of the workers' compensation

framework.

To state a procedural due process claim, Plaintiff must allege "(1) a liberty

or property interest protected by the Constitution; (2) a deprivation of the interest

by the government; [and] (3) lack of process."  *Wright v. Riveland*, 219 F.3d 905,

913 (9th Cir. 2000) (quoting *Portman v. Cty of Santa Clara*, 995 F.2d 898, 904

(9th Cir. 1993)).  Plaintiff asserts that, contrary to a DLIR decision that awarded

Plaintiff compensation and indicated that his benefits would not terminate until the director determined otherwise, ECF No. 46-7 at 3, Defendant Nishimoto terminated Plaintiff's compensation benefits because he did not provide medical slips showing that he was still injured.

Defendants do not dispute the first two elements. They argue only that the workers' compensation statute provided adequate process. Courts have generally held that workers' compensation statutes that provide hearings and appeals are adequate process, and Plaintiff does not challenge the procedures afforded by Hawai'i's workers' compensation statute. *See, e.g.*, *Benavidez v. Dep't of Labor*, 130 F. App'x 878, 879 (9th Cir. 2005); *Rumph v. State Workmen's Ins. Fund*, 964 F.Supp. 180, 188 (E.D. Pa. 1997); *Tomasello v. North Arkansas Wholesale, Inc.*, No. CV 06-2078-PHX-JAT, 2007 U.S. Dist. LEXIS 53386, at *9–11, 2007 WL 2126498, at *3–4 (D. Ariz. July 23, 2007).

Indeed, Hawai'i's workers' compensation system provides for such hearings and appeals, HRS § 386-86; HRS § 386-87, and requires that an employee provide interim medical reports "to verify the claimant's current diagnosis and prognosis." HRS § 386-96. Defendant Nishimoto's letter to Plaintiff informed him that the Department of Human Resources Development would not approve his workers' compensation benefits beginning on April 11, 2017, because he failed to provide a proper medical examination slip beyond that date. *See* ECF No. 40-3. Thereafter,

on July 19, 2017, DLIR held a third hearing regarding Plaintiff's worker's compensation benefits which Plaintiff attended.  ECF No. 46-8.  Plaintiff appealed that decision, and the appeal is currently pending.  ECF No. 50 ¶ 4; ECF No. 50-5. Plaintiff does not dispute that his current appeal concerns whether he is entitled to worker's compensation benefits from March to July, 2017—the very time period Plaintiff alleges he was wrongfully denied benefits by Defendant Nishimoto. Thus, Plaintiff is utilizing the procedures available in the workers' compensation system to challenge the termination of his benefits, ECF No. 50-5, and has been afforded adequate process.

For these reasons, the Court GRANTS summary judgment on Count 14.

### ii.      Substantive Due Process (Count 15)

Plaintiff also asserts that certain Defendants in their individual capacities violated Plaintiff's substantive due process rights when they (1) terminated his employment under an arbitrary and capricious interpretation of the collective bargaining agreement's leave policy; (2) failed to adequately investigate his medical condition; and (3) failed to adequately address his concerns over the office's air vents.  ECF No. 36 ¶¶ 70, 71, 72.

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty."  *Engquist*

31

*v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) (citing *Squaw Valley*

*Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2007)).  Thus, a threshold matter

in a substantive due process claim is the showing of a liberty or property interest

protected by the Constitution.  And "most courts have rejected the claim that

substantive due process protects the right to particular public employment

position."  *Id.* at 996–97.  Even "tenured public employment is a wholly state-

created contract right; it bears little resemblance to other rights and property

interests that have been deemed fundamental under the Constitution."  *Nicholas v.*

*Penn. State Univ.*, 227 F.3d 133, 143 (3rd Cir. 2000).  Moreover, even the Circuits

that have applied a substantive due process right to public employment generally

require a plaintiff to show that the termination "is so arbitrary and capricious as to

be irrational."  *See Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997).

Defendants move for summary judgment on Plaintiff's substantive due

process claim on the same grounds that they move for summary judgment on his

procedural due process grounds.  But Defendants' five conclusory arguments do

not apply to Plaintiff's substantive due process claim.  First, Defendants contend

that they did not discriminate on the basis of race, ECF No. 45-3 at 26, despite the

fact that Plaintiff's substantive due process claim does not allege he was

terminated based on his race.  *See* ECF No. 36 at 19–20.  Second, Defendants

argue that the Eleventh Amendment bars the claim "to the extent . . . [it] seeks

money damages against the State or individual Defendants in their official capacities," because "a state is immune from certain actions." ECF No. 45-3 at 26. Because Plaintiff asserts his substantive due process claim against specific Defendants in their "individual capacities," the Eleventh Amendment is not implicated. ECF No. 36 at 19. Third, Defendants argue that Plaintiff has no constitutional rights with respect to workers' compensation payments. *See* ECF No. 45-3 at 27. But Plaintiff does not a allege a substantive due process claim based on a denial of workers' compensation. *See* ECF No. 36 at 19–20. Fourth, Defendants argue that Plaintiff was discharged pursuant to the terms of his employment agreement. *See* ECF No. 45-3 at 27. But Plaintiff's substantive due process claim alleges that the Defendants interpreted that agreement arbitrarily and capriciously. *See* ECF No. 36 ¶ 70. Fifth, Defendants argue that Plaintiff was given adequate procedure in the form of pre-termination and post-termination hearings. *See* ECF No. 45-3 at 26–27. But Plaintiff's substantive due process claim is not based on receiving inadequate process. *See* ECF No. 36 at 19–20. Defendants' arguments are conclusory assertions lacking in analysis and do nothing to address Plaintiff's substantive due process claim. Although the Court may grant summary judgment for reasons not raised by the parties, Fed. R. Civ. P. 56(f), the Court must provide adequate notice and an opportunity to oppose. *Norse v. City of Santa Cruz*, 629 F.3d 966, 971–72 (9th Cir. 2010).

Thus, the Court orders the parties to provide supplemental briefing on (1) what life, liberty or property interest Plaintiff alleges the Defendants deprived him of; (2) whether the alleged life, liberty or property interest is protected by the Substantive Due Process Clause; and (3) whether there is a dispute of fact over whether Defendants' termination of Plaintiff was arbitrary and capricious. Defendant is required to file a brief on these issues by July 3, 2019; Plaintiff's Opposition is due on July 12, 2019; and Defendant may file a reply by July 19, 2019. The briefs may be no more than 10 pages in length; Defendant's reply may be no more than 5 pages in length.

### E. Plaintiff's Remaining Claims (Counts 11, 16–20)

#### i. Subject Matter Jurisdiction

Defendants move for summary judgment on the remaining claims solely on the grounds that Plaintiff has not yet concluded his grievance remedies under the collective bargaining agreement. ECF No. 45-3 at 29–30. Defendants allege, and Plaintiff does not dispute, that Plaintiff submitted a grievance over his discharge and arbitration is currently pending. *Id.* Defendants cite to several cases which all stand for the proposition that a court cannot hear a claim for breach of a collective bargaining agreement until the grievance procedures of the agreement are exhausted. *See, e.g.*, *Carr v. Pac. Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) ("As a general rule, members of a collective bargaining unit must first

exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement.").  Although there are some exceptions to this rule, Plaintiff does not offer any, ECF No. 65-1 at 13–23, and does not dispute that an arbitration—one of the grievance procedures in the collective bargaining agreement—is still ongoing.

Thus, Defendants contend that the court lacks subject matter jurisdiction at this time to hear Plaintiff's "breach of [collective bargaining agreement] claims," because Plaintiff has not yet exhausted the specified grievance procedures.  ECF No. 45-3 at 29; ECF No. 45-24, ECF No. 45-25, ECF No. 45-26.  Although Defendants contend that Counts 11, 16, 17, 18, 19, and 20 all allege a breach of the collective bargaining agreement, the Court is not persuaded.  It is true that Counts 16 and 18 amount to breach of contract claims, alleging that Defendants failed to pay Plaintiff under the terms of the collective bargaining agreement.  *See* ECF No. 36 at 20, 23.  But the remaining claims do not.  Count 11 is a claim for termination against public policy under HRS § 76-46.  Similarly, Count 17 is a claim for unpaid minimum wages under the Fair Labor Standards Act and under the corresponding Hawaiʻi statutory requirements.  *See Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993) (discussing Fair Labor Standards Act claim for nonpayment of wages); HRS § 78-17.  Count 19 alleges the tort of bad faith against certain individual Defendants for failing to properly investigate his workers' compensation

claims, and Count 20 alleges that those Defendants interfered with his employment relationship. Thus, Counts 11, 17, 19, and 20 are not claims for a breach of the collective bargaining agreement. Counts 16 and 18 are breach of the collective bargaining agreement claims and there is no dispute that Plaintiff has not exhausted the grievance procedures in the collective bargaining agreement.

Accordingly, Defendants' Motion for Summary Judgment on their exhaustion defense is GRANTED as to Counts 16 and 18. The Court DENIES Defendants' Motion on Counts 11, 17, 19, 20.

### ii. Supplemental Jurisdiction

Defendants also argue that "if the Court dismisses the federal law claims, the Court should also decline to address the State law tort claims." ECF No. 45-3 at 30. However, as discussed above, Count 17 contains a federal claim that still remains. Thus, the Court does not decline to exercise supplemental jurisdiction because the Court has not "dismissed all claims over which it has original jurisdiction." ECF No. 45-3 at 30; 28 U.S.C. § 1367(c).

### F. Plaintiff's Motions for Summary Judgment

Plaintiff moves for summary judgment on Counts 13, 14, and 18. As discussed above, however, the Court GRANTS Defendants' Motion for Summary Judgment on Counts 13, 14, and 18. Thus, the Court DENIES Plaintiff's motions for partial summary judgment.

## IV.   CONCLUSION

For the reasons set forth above the Court GRANTS Defendants' Motion for Summary Judgment on Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 16 and 18. The Court DENIES Defendants' Motion on Counts 11, 17, 19, 20.  Finally, the Court ORDERS Supplemental briefing on Count 15 as outlined in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 20, 2019.

Jill A. Otake
United States District Judge

Civil No. 18-00284 JAO-RT – Cooper v. Haw. Dep't Tax - ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

37